## Commonwealth *v.* Bernabei, Appellant.

*Unlawful possession of narcotic drugs—Evidence—Act of July 11, 1917, P. L. 758—Pharmacist—Possession in regular course of business.*

In the trial of an indictment for possessing and selling narcotic drugs, the defendant was convicted on the count of possessing, but acquitted on the count of selling. A new trial was granted.

On the second trial, which was confined to the count of unlawful possession, evidence concerning the possession of drugs incident to alleged sales which had been testified to at the first trial, was admissible.

The phrase "in the regular course of their business" as used in Section 4 of the Act of July 11, 1917, P. L. 758, implies lawful conduct of the business. No business can be "regular", within the meaning of the act, if carried on in violation of law. .

The Act of July 11, 1917, P. L. 758 provides that no manufacturer, producer, importer or person engaged in the wholesale drug trade, may lawfully sell or distribute narcotic drugs to any pharmacist, except in pursuance of a written order signed by the person to whom such drug is sold.

Any registered pharmacist who buys or obtains such narcotic drugs, except pursuant to such written order, is a party to a violation of the Act of Assembly, and his possession is not in the regular course of business, and subjects him to indictment for violating the provisions of the Act of July 11, 1917, P. L. 758 relating to unlawful possession.

The Act of Congress (Act of Dec. 17, 1914, C. 1 Sec. 1-12, 38 Stat. 785-790, and its amendments) provides that it shall be unlawful to purchase, sell, dispense or distribute any narcotic drugs except in the original stamped package or from the original stamped package.

While one who has purchased narcotic drugs contrary to the provisions of the Act of Congress, may not be indicted in the courts of Pennsylvania for such unlawful purchase, his possession of the drugs so unlawfully obtained is not a possession in the regular course of business within the meaning of the Act of July 11, 1917, P. L. 758, and a registered pharmacist in possession of such drugs, so unlawfully obtained, may be indicted under the latter act for such unlawful possession.

Argued October 6, 1925.  Appeal No. 226 October
T., 1925, by defendant from the judgment and sen-
tence of the Q. S. Philadelphia County, July T., 1924
No. 477, on verdict of guilty in the case of Common-
wealth of Pennsylvania v. Ernest Bernabei.  Before
PORTER, HENDERSON, TREXLER, KELLER, LINN and GAW-
THROP, JJ.  Affirmed.

Indictment for possessing narcotic drugs.  Before
HENNINGER, P. J. 50th Judicial District, specially pre-
siding.

The facts are stated in the opinion of the Superior
Court.

Verdict of guilty on which judgment of sentence was
passed.  Defendant appealed.

*Errors assigned* were, among others, various rulings
on evidence.

*Harry A. Mackey,* for appellant.

*Michael A. Foley,* Asst. District Attorney and with
him *Samuel P. Rotan,* District Attorney, for appellee.

OPINION BY KELLER, J., December 14, 1925:
Appellant was charged with violating the provisions
of the Act of July 11, 1917, P. L. 758, regulating the
possession, control, sale, etc., of certain narcotic drugs.
The indictment contained two counts.  The first
charged the defendant with unlawfully having in his
possession and under his control a quantity of cocaine;
the second, with unlawfully dealing in, dispensing, sell-
ing, and trafficking in said drug.  He was convicted on
the first count and acquitted on the second.  The court
subsequently granted a new trial.  At his second trial,
which was confined to the count for unlawful posses-
sion, defendant's counsel took the position that no
evidence concerning the possession of drugs incident

to alleged sales which had been testified to at the first trial could be received. We cannot assent to this proposition. At the first trial this very same evidence, though found by the jury to be insufficient to support a conviction of the unlawful sale or dispensing of cocaine, was adjudged sufficient to sustain a conviction for unlawful possession of the drug. If relevant and competent evidence on the charge of unlawful possession at the first trial, it did not become irrelevant and incompetent on the same charge because the defendant was acquitted of unlawfully selling the drug. A somewhat similar contention was advanced in the case of Com. v. Leib, 76 Pa. Superior Ct. 413, 423, 426, where the defendant was convicted of forging certain duplicate tax receipts and acquitted of uttering them. We disposed of the contention as follows: "An acquittal of forgery does not bar a prosecution for uttering the same forged instrument; .......nor does an acquittal of uttering a forged instrument preclude a subsequent prosecution for forging it.... ....And any evidence introduced at the first trial which is relevant to the second prosecution may be offered and received on such trial; none of it is discredited, so as to bar its admission, or rendered incompetent, at the second trial, because of the defendant's acquittal at the trial when it was first presented...... Had the defendant been tried for forgery alone on this testimony and been convicted, and subsequently been tried for uttering the forgery on the same testimony and been acquitted, his former conviction would not have been affected thereby. Nor if he had been first tried on the charge of uttering, and acquitted, would it have prevented his being tried for forgery and the same testimony being used to secure his conviction on the later charge...... In like manner, a man may be acquitted of receiving stolen goods and subsequently convicted of larceny when the only incriminating evidence in the case is his possession of the stolen article,

or he may be acquitted of larceny and subsequently convicted of receiving stolen goods, on the same evidence; in either case the acquittal does not render relevant and competent evidence in the second case incompetent and inadmissible because it was received in the first case and failed to secure a conviction." The second, third, fourth and fifth assignments of error are overruled.

Appellant's main contention, however, is that having proven he was a registered pharmacist actually engaged as a retail druggist, he could not be convicted of the unlawful possession of cocaine; that proof that he came within one of the excepted classes enumerated in section 4 of the Act absolutely precluded his conviction of unlawfully possessing any drug within the purview of the statute. We do not so read the Act. In the first place, section 4 applies to the sale, dispensing and distributing of said drugs no less than to their possession. It provides: "No person shall have in his possession or under his control, or deal in, dispense, sell, deliver, distribute, prescribe, traffic in, or give away, any of said drugs." Then comes the exception. "This section does not apply, *in the regular course of their business,* profession, employment, occupation, or duties, to—(a) manufacturers of drugs; (b) persons engaged in the wholesale drug trade; (c) importers or exporters of drugs; (d) registered pharmacists actually engaged as retail druggists; (e) bona fide owners of pharmacies or drug stores; (f) licensed physicians," etc., covering in all seventeen excepted classes. But none of the seventeen classes is absolutely excepted from the prohibition of section 4. It is limited to possession, sale, etc., *in the regular course of their business, profession, employment, occupation, or duties.* Not even a manufacturer of drugs, a wholesale druggist, an importer or exporter of drugs, or a registered pharmacist actually engaged as a retail druggist, may be lawfully possessed of opium or co-

caine out of the regular course of his business, profession or occupation. The amount is not limited by the Act if obtained, held, and lawfully disposed of in the regular course of his business; but any quantity is unlawfully possessed if obtained out of the regular course of business, or if dealt in, distributed or trafficked in contrary to the Act. The phrase, "in the regular course of their business" implies lawful conduct of the business. No business can be "regular" within the meaning of the Act if carried on in violation of law.

Under our federal system of government certain matters are subject to regulation by both the national and state law-making bodies. Ordinarily the authority of Congress is not only supreme, but also exclusive, as to such matters as are committed to it by the federal constitution. But certain subjects may be legislated upon from two different angles or points of view; by Congress as respects the production of revenue and the regulation of interstate commerce; by the states as respects the police power. In such cases any enactment by the state is supplementary to legislation by Congress. Both must be complied with if business respecting such matter is to be carried on in lawful and regular course within such state. Such is the situation as respects the regulation of the possession, sale and use of narcotic drugs. Congress has enacted certain regulations in the Harrison Drug Act (Act of Dec. 17, 1914, C. I. Sec. 12, 38 Stat. 785-790; Barnes Federal Code, Sec. 5452-5462; and its amendments Feb. 24, 1919, C. 18, Sec. 1006 and Nov. 23, 1921, C. 136, Sec. 1005, 42 Stat. 298-300, Barnes Federal Code Supp. Sec. 5452-5457) ; and this State has legislated upon the subject in the Act of July 11, 1917, supra. By the latter act no manufacturer, producer, importer or person engaged in the wholesale drug trade may lawfully sell or distribute said drugs to any pharmacist except in pursuance of a written order

signed by the person to whom such drug is sold, which order must be preserved for a period of two years, subject to inspection by the proper authorities (Sec. 6); nor may any registered pharmacist or owner of a drug store lawfully sell or distribute said drugs to a physician, dentist, or other registered pharmacist or drug store owner except in pursuance of such written order signed by such purchaser, which is likewise to be preserved subject to inspection for a period of two years; nor to an ordinary individual except in pursuance of a written prescription which must likewise be preserved for two years (Sec. 7). These requirements were enacted, without doubt, to furnish the authorities with a means of checking up the sales and purchases of narcotic drugs. Any registered pharmacist who buys or obtains such narcotic drugs in this State except pursuant to such written order is party to a violation of the Act of Assembly and, while no penalty is imposed by our State Act on the purchaser for obtaining such drug without a written order, his possession pursuant thereto is not in the regular course of business and subjects him to indictment for violating the provisions of the Act of 1917 relating to unlawful possession. The Harrison Drug Act, with its amendments, is even more restrictive. It levies an internal revenue tax upon all such narcotic drugs sold or removed for consumption, to be paid by the importer, manufacturer, producer, or compounder, and to be represented by appropriate internal revenue stamps which must be affixed to the bottle or other container so as to securely seal the stopper, covering, or wrapper thereof; and it provides that it shall be unlawful for any person to *purchase,* sell, dispense, or distribute any of the said drugs except in the original stamped package, or from the original stamped package; and the absence of appropriate tax paid stamps from any of the said drugs shall be prima facie evidence of a violation of that section of the act by the person in

whose possession the same may be found; except that these provisions shall not apply to a person who has in his possession any of the said drugs which have been obtained from a registered dealer in pursuance of a prescription written for legitimate medical uses. Said Act also requires that all persons dealing in such drugs shall keep a record of the drugs so bought and dispensed by them, as well as the orders and prescriptions in pursuance of which the said drugs are furnished, which are subject to inspection by the proper authorities. The possession of unstamped packages of cocaine by a dealer is unlawful and subjects the drug to forfeiture: Agnello v. United States.—— U. S. ——, No. 6 October Term 1925, Advance Opinions November 2, 1925, page 1, 3, 70 L. Ed. ——. While one who has purchased cocaine contrary to the provisions of the Harrison Drug Act may not be indicted in our State courts for such unlawful purchase, his possession of the drug so unlawfully obtained is not a possession in the regular course of business within the meaning of the Act of July 11, 1917, supra, and a registered pharmacist in possession of such drug so unlawfully obtained may be indicted under our Act for such unlawful possession.

At the time appellant was arrested, search was made of his premises and drugs were found in his narcotic drug locker which apparently corresponded with the records which he was required to keep. On further search in another part of the store, apart from his narcotic drug locker, three packages and a muslin bag were found containing about 1700 grains of pure cocaine, none of which had been entered in the defendant's records and which the evidence did not show to be stamped. The defendant had previously denied that he had in his possession any cocaine, or other narcotic drugs, except those contained in his regular narcotic locker and the officer testified that when this large quantity of cocaine was found, the defendant denied

knowing anything about it. On the trial defendant testified that the cocaine thus discovered apart from his narcotic locker did not belong to him; that it had been left with him the day before by an Italian sailor; that he did not purchase it, but took it from the sailor; ostensibly for the purpose of analyzing it, but really intending to report it to the police officers with a view to its confiscation by the proper authorities and the arrest of its owner. The learned court in its charge left this question of fact to the jury with instructions that, if they credited the defendant's testimony, their verdict should be not guilty; if they did not credit his story, they might find a verdict of guilty, provided they found the other facts which had previously been submitted to them, with much detail, in favor of the Commonwealth. We are of opinion that the charge of the court as to this feature of the case was as favorable as the defendant was entitled to ask. We have no hesitation in holding that if defendant purchased the cocaine thus concealed on his premises from a sailor or any other person without compliance with the provisions of the Act of 1917 and the Harrison Drug Act, his possession was not in the regular course of business but was illegal and in violation of the Act of 1917 and justified his conviction under that Act.

This disposes of most of the remaining assignments. The rest need not be considered at length. Defendant's declaration to Sophie Goodman was a self-serving declaration pure and simple and properly excluded as hearsay evidence. The defendant was permitted to testify fully as respects his purpose in receiving the drug from the sailor. It was wholly immaterial whether or not sailors were accustomed to peddle cocaine in that section of the city. While the cross-examination of defendant's character witnesses went rather far we are satisfied that it did not amount to reversible error.

The assignments of error are all overruled. The

judgment is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed when the appeal in this case was made a supersedeas.